## DAWSON *v.* PETER.

1. TAX DEEDS—EVIDENCE OF TITLE—BURDEN OF PROOF—CONSTITUTIONAL LAW.

The tax laws of 1889 and 1893 do not provide that deeds executed thereunder shall be *prima facie* evidence of title in the grantee, but attempt to make them conclusive evidence, which it is beyond the power of the legislature to do ( *Taylor* v. *Deveaux*, 100 Mich. 581 ); and therefore one who claims under such a deed has the burden of showing the regularity of all anterior proceedings, the same as at common law.

2. SAME—FORM OF CONVEYANCE—QUITCLAIM.

The tax law does not prescribe the form of the deeds to be given thereunder, and hence a deed in the form prescribed by 2 How. Stat. § 5729, defining what shall be a sufficient quitclaim deed, is sufficient to pass title to the grantee.

3. SAME—PURCHASE OF STATE TAX LANDS—INTEREST ACQUIRED.

Under section 70 of the tax law of 1893, providing that, for want of bidders at the annual sale, the land shall be bid off to the State, "for the State, county, and township, in proportion to the" amount due each; and section 84, providing for the after sale and conveyance of all the right, title, and interest "of the State" in the lands so acquired,—the purchaser takes a fee in the land, if all the proceedings are regular.

4. MORTGAGES—EJECTMENT—PARTIES.

A mortgagee of lands has no title thereto, but merely a lien thereon, prior to foreclosure and the expiration of the redemption period ( 2 How. Stat. § 7847 ), and therefore, unless in

possession of the premises, he cannot be made a party defendant to an action of ejectment, under 2 How. Stat. § 7791, authorizing such action against persons "claiming title to or some interest in" the premises.

Error to Sanilac; Beach, J. Submitted October 7, 1898. Decided January 20, 1899.

Ejectment by John Dawson against Oliver Peter, Harlan P. Smith, and John J. McTavish. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*G. W. Davis*, for appellants.

*Gates & Rapley*, for appellee.

Long, J. Action of ejectment. Plaintiff claims title in fee to the S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$, and the S. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, of section 18, township 10 N., of range 12 E., Sanilac county. To prove his title, plaintiff offered in evidence a State tax land deed executed by the auditor general, dated November 11, 1897. The deed recites that the plaintiff became the purchaser of the lands on August 25, 1897, and that they were bid off to the State for the taxes assessed thereon in the years 1890, 1891, and 1892; that the plaintiff obtained a certificate from the auditor general for the purchase of the lands, and paid therefor $284.18; and that such certificate has been surrendered and canceled. The deed then recites that—

"The auditor general of the State of Michigan, in the name of the people of said State, and by virtue of the authority vested in him by the laws thereof, in consideration of the premises, and the payment of the purchase money above mentioned, the receipt whereof is hereby confessed and acknowledged, does by these presents remise, release, and quitclaim unto the said John Dawson, party of the second part, and to his heirs and assigns, forever, all the rights acquired by the State in virtue of the original sale or sales to the State in the premises above described," etc.

To the introduction of this deed defendants' counsel made the following objections:

"*First.* That said deed is incompetent, and has no tendency to prove title in the plaintiff.

"*Second.* That it bears date November 11, 1897, which is subsequent to the taking effect of Act No. 229, Pub. Acts 1897, which prohibits a procedure to recover posses- sion of lands based on tax titles claimed to have been derived from the sale of said land for taxes, when the pur- chase was made, either at the delinquent tax sale or from the State tax land list, subsequent to the time when said act took effect, without serving such a notice as is pre- scribed by said act.   *   *   *

"*Fourth.* It is incompetent evidence to prove title in the plaintiff, because upon its face it does not purport to convey title in fee, but simply to convey to the grantee therein the right, title, and interest of the State; or, in other words, it is a deed which undertakes to remise, re- lease, and quitclaim the interest of the State to the plain- tiff, and unless he proves that at the time of the execution of the deed plaintiff had some other interest in the land, upon which the words 'remise, release, and quitclaim' could operate, he obtained no title whatever by the deed."

Plaintiff's attorney then asked the attorney for the de- fendants if he would concede that Oliver Peter has on record a deed of the premises, and that the other two defendants have mortgages on the premises, to which defendants' counsel replied:

"Yes; I will concede that Mr. Oliver Peter owns, as I understand it, the government chain of title by deed, and Mr. McTavish and Mr. Smith have mortgages, and that is the only interest they have in the land."

Thereupon plaintiff's attorney asked defendants' attor- ney if he would concede that Mr. Dawson paid the money for the land the 25th of August, 1897, to which counsel replied:

"I will make this concession: That Mr. Dawson sent to the office of the auditor general, by mail, on the 25th day of August, 1897, a draft for $287.75, accompanied by this letter, a copy of which I will read:

"'Marlette, Mich., August 24, 1897.

"'Auditor General,
          "'Lansing, Mich.
     "'*Dear Sir :* Inclosed find draft for $287.75, for S. E. ¼ of S. W. ¼ of section 18, 10–12 E., taxes of 1890, 1891, and 1892, $150; also S. W. ¼ of S. E. ¼ of section 18, 10–12 E., for taxes of 1890, 1891, and 1892, $137.75.                    Yours truly,
                              "'John Dawson.'"

On the back of the letter is a memorandum made in the office of the auditor general, which shows that it was received August 25, 1897, with a draft for $287.50, and that they returned $3.37 afterwards to him.

"*Q. by Plaintiff's Attorney:* Do you concede that they received the money the 25th of August, 1897, from John Dawson, for the purchase of this land for which this deed was afterwards issued?"

To which defendants' attorney answered: "The draft was sent in this way, and the deed was issued in pursuance of the application afterwards.

"*Q.* Do you concede that the draft was of that nature to represent money, and was accepted as money?

"*A.* I suppose they received the money on it, or they would not have issued the deed."

The deed was received in evidence, and plaintiff rested. The decree of the court authorizing the sale of the land for taxes was not offered in evidence; nor were there offered the proceedings to foreclose the tax lien had prior to the making of the deed. Defendants' counsel asked the court to direct the verdict in favor of defendants. The court charged the jury to return a verdict in favor of plaintiff. Defendants bring error.

1. The proceedings for the foreclosure of the tax lien for the year 1890 were had under the tax law of 1889. The proceedings for the sale for the taxes of 1891 and 1892 were had under the tax law of 1893. The rule of the common law is that one who asserts title under a tax deed has the burden of showing that the original title has been forfeited pursuant to law, by showing the regularity of all the proceedings anterior to the deed. In Cooley, Tax'n (2d Ed.), 517, the rule is stated that:

" The deed of conveyance would not stand for this evidence. It would prove its own execution; nothing more. The power to execute it must be shown before the deed itself could have any force; for no officer can make out his own jurisdiction to act by the mere fact of acting."

The plaintiff, however, relies upon the tax statute, which he contends makes the deed evidence without proof of the former proceedings showing that all the steps required by the statute have been properly and timely taken. Section 67 of Act No. 195, Pub. Acts 1889 (3 How. Stat. § 1170*g*6), provides that "such deeds shall convey an absolute title to the land sold, and be conclusive evidence of title in fee in the grantee," etc. Section 72 of Act No. 206, Pub. Acts 1893, contains the same provision as to tax deeds. But it is contended by counsel for defendants that this provision of these statutes has been held unconstitutional and void by this court in *Taylor* v. *Deveaux*, 100 Mich. 581, and that, therefore, the plaintiff was bound to follow the common-law rule, and show the proceedings leading up to the giving of the deed, before he could put his deed in evidence. It was said by this court in the last-mentioned case that:

" The statute, of necessity, determines the nature of the title conveyed by a valid sale and deed, viz., an absolute title in fee, subject to subsequent taxes. It is not within the power of the legislature to deny the right to defend title against a tax deed. 1 Blackw. Tax Titles, §§ 78–80; Cooley, Const. Lim. (6th Ed.) 452. We think it much more consistent to hold that the legislative intent was that the deed should be evidence of title in fee simple, after the right to give the deed had been shown by proof of a valid decree."

The contention of counsel for defendants is undoubtedly correct. These provisions of the statute were beyond the power of the legislature to enact. It is within the power of the legislature to make the tax deed *prima facie* evidence of the regularity of all the proceedings, and of title in the purchaser, thus shifting the burden of proof upon the party defending against the deed. Cooley, Tax'n (2d

Ed.), 519. But these statutes do not attempt to do this; and under *Taylor* v. *Deveaux, supra,* the rule of the common law must be applied, and the burden cast upon the plaintiff to show a valid decree, and a sale thereunder. The statute does not purport to make the deed evidence that the sale was regular; nor does it purport to make the deed evidence, even *prima facie,* of the truth of the recitals contained therein.

2. It is contended that the form of the deed in the present case is not such as to entitle the plaintiff to recover in an action of ejectment, even if all the other proceedings anterior thereto were proved, and were in strict compliance with the law. These statutes prescribe no form for such deeds, but section 67 of the tax law of 1889 provides that the auditor general shall "execute deeds to the purchasers in such form as shall be determined by him," and section 72 of the tax law of 1893 provides that, on presentation of the certificate of sale, the auditor general or his deputy "shall execute and deliver to the purchaser, his heirs or assigns, a deed of the land therein described." It is also provided by section 5729, 2 How. Stat., that:

"Any conveyance of lands worded in substance as follows: 'A. B. quitclaims to C. D. (here describe the premises) for the sum of (here insert the consideration),' the said conveyance being duly signed, sealed, and acknowledged by the grantor, shall be deemed to be a good and sufficient conveyance in quitclaim to the grantee, his heirs and assigns."

No greater formality in making a conveyance by the State should be required than as between individuals. The words in the form of the deed adopted by the auditor general are the words provided by this act; that is, the auditor general quitclaims all the interest of the State in the land. This deed operated to convey the title to the grantee.

But counsel further contends that the State had no interest in the land, except as to the amount of the State tax; that it had no interest in the amount of taxes for

county, city, etc. The statute provides that, for want of bidders, the lands shall be struck off to the State. We think there is no force in these contentions.

3. It is also contended that the defendants McTavish and Smith being mortgagees only, and not being in possession of the premises, they could not be made parties defendant, and that the court was in error in directing verdict against them. The rule is stated in 7 Enc. Pl. & Prac. 314, that "neither the landlord, nor any other person out of possession of the premises demanded, can be joined as a co-defendant in ejectment without his consent, and, if so joined, will be entitled to a nonsuit." This was undoubtedly the common-law rule. But the rule was later modified, and the landlord who received rents and profits was permitted to defend in ejectment. In *Pearson* v. *Roe*, 6 Bing. 613, the rule was laid down by the court of common pleas that a mortgagee would not be permitted to come in and defend as landlord in ejectment unless he were interested in the result of the suit; so that mortgagees who received rents and profits were later permitted to defend in ejectment. This rule was modified in New York in *Wisner* v. *Wilcocks*, Cole. & C. Cas. 62. In that case it was moved that Wilcocks be admitted to defend jointly, on his affidavit that the defendants held of him as their landlord. This was opposed on the ground that the affidavit did not specify that Wilcocks was in the receipt of rent. The motion was, however, granted. In *Nathan* v. *Fen*, 6 N. J. Law, 478, it was held that a mortgagee might be admitted to defend in an action of ejectment, unless the lessor of the plaintiff would discharge the mortgage.

These cases, however, were ruled upon the principle that the mortgagee had title under his mortgage. In this State the mortgagee has no title to the premises, but a lien upon them, until after foreclosure, and after the expiration of the time of redemption; so that the question of whether a mortgagee may be made a party defendant in ejectment must depend upon the wording of our statute. 2 How. Stat. § 7791, provides that:

" If the premises for which the action is brought are actually occupied by any person, such actual occupant shall be named a defendant in the declaration; if they are not so occupied, the action must be brought against some person exercising acts of ownership on the premises claimed, or claiming title thereto or some interest therein at the commencement of the suit; and all persons claiming any title to the premises adverse to that claimed by the plaintiff may in all cases be made defendants in such action."

Mortgages executed prior to March 8, 1843, were held to convey title to the mortgaged premises, and in default in payment the mortgagee could maintain ejectment to recover possession of the lands. But by Act No. 62, Laws 1843, this rule was changed, and it is now provided:

"No action of ejectment shall hereafter be maintained by a mortgagee, or his assigns or representatives, for the recovery of the mortgaged premises, until the title thereto shall have become absolute upon a foreclosure of the mortgage." 2 How. Stat. § 7847.

Since this act took effect, in 1843, mortgages are not deemed to be conveyances, but are securities only; and, until foreclosure and sale, the title to the premises and the right of possession remain in the mortgagor.

In *Dougherty* v. *Randall*, 3 Mich. 588, it was said:

"His mortgage interest is but an incident of the debt, and consequently must follow the debt, and when the debt is paid his lien upon the land is discharged; and therefore the mortgage is nothing more than a chose in action, and the mortgagee's interest therein, before foreclosure and sale, a mere chattel interest, which may be transferred without the execution of a deed or other instrument in writing, where the statute does not require the transfer to be made by deed. In this State the statute contains no such provisions."

We think section 7791, 2 How. Stat., was not intended to give the right to plaintiffs in ejectment to bring mortgagees in as parties defendant until after foreclosure and sale. The "interest therein," mentioned in that section, means some legal interest, and not a mere equity. A mortgagee cannot bring ejectment until after foreclosure

and sale, and he should not be put to the cost and expense of defending his mortgage interest in ejectment until that time.

The judgment is reversed, and a new trial granted.

The other Justices concurred.