## MORSE v. AUDITOR GENERAL.

1. TAXATION — TAX SALES — TAX HOMESTEAD LANDS — DEED TO STATE — EFFECT.

The State does not, by virtue of the deed to it by the auditor general, hold as a purchaser State tax homestead lands within the meaning of the statutes limiting the time within which action may be brought against a claimant under a tax deed (§ 73, Act No. 206, Pub. Acts 1893, and § 116, Act No. 153, Pub. Acts 1885), especially in view of Act No. 84, Pub. Acts 1903, establishing the time within which the owners of the original title shall begin proceedings against the State to recover such lands.

2. SAME — ACTION BY OWNER — PAYMENT OF TAXES.

The owner of the original title to lands which have been deeded to the State as tax homestead lands is not required by section 131 of the general tax law, as amended, to pay to the auditor general all delinquent taxes returned to the auditor general thereon before bringing suit against the claimant, where the claimant is not a homesteader.

3. SAME — DEEDS — EVIDENCE OF TITLE.

Deeds from the auditor general to the State, and from the commissioner of the State land office to a purchaser who is not a homesteader, of lands held by the State as State tax homestead lands, are neither prima facie nor conclusive evidence of title in the purchaser.

4. SAME—CANCELLATION OF SALES—EFFECT.

    The auditor general, in exercising his authority to cancel tax sales, and applying for and obtaining new decrees and proceeding to a sale thereunder, destroys all effect of the sales so canceled, and renews the right of the owner to redeem.

5. SAME—PREMATURE DEED—EFFECT.

    A deed from the auditor general to the State, as abandoned, of lands bid off to the State at tax sales is unauthorized before expiration of the statutory period of redemption, and conveys no title.

6. SAME—EJECTMENT BY OWNER—DEFENSES.

    In ejectment by the holder of the original title against a purchaser of lands from the State as State tax homestead lands, defendant cannot defeat recovery by merely showing a sale of the lands to the State under a valid decree, and the expiration of the period of redemption.

7. SAME—TAX SALES—PURCHASE BY STATE—RIGHTS ACQUIRED.

    The interest which the State acquires at a tax sale by bidding in the lands sold is one which cannot be, aside from the provisions respecting trespass and to prevent waste, asserted by the State, under existing laws, except by sale, since the law does not authorize the State to take possession or maintain an action for possession, but contemplates that the original owner shall retain possession.

    HOOKER, GRANT, and MOORE, JJ., dissenting in part.

Error to Montmorency; Emerick, J. Submitted April 27, 1905. (Docket No. 187.) Decided April 30, 1906.

Ejectment by Benjamin C. Morse against Perry F. Powers, auditor general, Edwin A. Wildey, commissioner of the State land office, and Edward H. Gillman, trustee. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Reversed.

*Henry K. Gustin* and *Dayton W. Closser*, for appellant.

*John E. Bird*, Attorney General (*Charles W. McGill*, of counsel), for appellees Auditor General and Commissioner of the State Land Office.

*O'Brien & Francis*, for appellee Gillman.

Ostrander, J. The following statement of facts found in the brief for the appellant is conceded to be correct:

" This is a suit in ejectment to recover possession of the following lands: N. E. ¼ of S. E. ¼ of sec. 3, S. E. ¼ of N. E. ¼ of sec. 11, S. W. ¼ of N. W. ¼ of sec. 12, W. ½ of S. W. ¼ of sec. 12, S. E. ¼ of S. W. ¼ of sec. 12, N. ½ of N. E. ¼ of sec. 14, E. ½ of N. W. ¼ of sec. 23, N. ½ of S. E. ¼ of sec. 26, N. W. ¼ of N. E. ¼ of sec. 27, E. ½ of S. E. ¼ of sec. 27, N. E. ¼ of N. E. ¼ of sec. 34, S. W. ¼ of N. E. ¼ of sec. 35, S. E. ¼ of N. W. ¼ of sec. 35, all in T. 29 N., R. 4 E. The plaintiff, Benjamin C. Morse, is the owner in fee simple, tracing his title by mesne conveyances from the government to himself. The defendant Edward H. Gillman, trustee for the Turtle Lake Hunting & Fishing Club, a sporting club that is endeavoring to establish a private game preserve out of the E. ½ of town 29 N., range 4 E., Montmorency county, and the W. ½ of town 29 N., range 5 E., Alpena county, claimed to be in actual possession of the lands. They have run a wire around the entire inclosure, six miles square. The lands in controversy are within this inclosure. The defendant Gillman claimed to own these lands by having purchased them by State tax homestead deeds from the State of Michigan, through the commissioner of the State land office, paying therefor the sum of 25 cents per acre. These purchases were made in November, 1901, and July, 1902. * * * The defendants further endeavor to prove their title by introducing in evidence the deeds from the auditor general of the State of Michigan to the State of Michigan. In the argument of this case the lands are divided into three classes, in accordance with the dates they were deeded by the auditor general of the State of Michigan to the State of Michigan, as follows:

" Class No. 1: Deeds Nos. 1 and 2, executed October 1, 1895. Deed No. 1 contains: N. E. ¼ of S. E. ¼ of sec. 3, S. ½ of N. E. ¼ of sec. 11, N. ½ of N. E. ¼ of sec. 13, N. E. ¼ of N. W. ¼ of sec. 23, all in T. 29 N., R. 4 E., bid off to the State at the tax sales in the years 1888, 1890, 1891, 1892, 1893, 1894, for taxes of 1886, 1887, 1888, 1889, 1890, 1891, and 1892. Deed No. 2 contains: S. W. ¼ of N. W. ¼ of sec. 12, W. ½ of S. W. ¼ of sec. 12, all in T. 29 N., R. 4 E., bid off to the State at the sales in the years 1890, 1891, 1892, 1893, and 1894, for the taxes of 1887, 1888, 1889, 1890, 1891, and 1892.

"Class No. 2: Deeds Nos. 3, 4, 5, 6, executed September 25, 1901. Deed No. 3 contains: S. E. ¼ of N. W. ¼ of sec. 23, N. ½ of S. E. ¼ of sec. 26, E. ½ of S. E. ¼ of sec. 27, all in T. 29 N., R. 4 E., bid off to the State at the sales in the years 1888, 1893, 1894, 1895, 1896, 1900, and 1901, for the taxes of 1886, 1891, 1892, 1893, 1894, 1897, and 1898. Deed No. 4 contains: S. E. ¼ of S. W. ¼ of sec. 12, T. 29 N., R. 4 E., bid off to the State at the sales in the years 1893, 1894, 1895, 1900, and 1901, for the taxes of 1891, 1892, 1893, 1897, and 1898. Deed No. 5 contains: S. W. ¼ of N. E. ¼ of sec. 14, T. 29 N., R. 4 E., bid off to the State at the sales in the years 1888, 1893, 1894, 1900, 1901, for the taxes of 1886, 1891, 1892, 1897, and 1898. Deed No. 6 contains· N. W. ¼ of S. E. ¼ of sec. 14, T. 29 N., R. 4 E., bid off to the State at the sales in the years 1887, 1888, 1893, 1894, 1895, 1896, 1900, and 1901, for the taxes of 1885, 1886, 1891, 1892, 1893, 1894, 1897, and 1898.

"Class No. 3: Deeds Nos. 7, 8, 9, 10, executed October 8, 1902. Deed No. 7 contains: S. W. ¼ of N. E. ¼ of sec. 35, T. 29 N., R. 4 E., bid off to the State at the tax sales in the years 1887, 1888, 1890, and 1901, for the taxes of 1885, 1886, 1887, 1888, 1890, 1895, 1897, and 1898. Deed No. 8 contains: S. E. ¼ of N. W. ¼ of sec. 35, T. 29 N., R. 4 E., bid off to the State at the tax sales in the years 1900 and 1901, for the taxes of 1888, 1890, 1895, 1896, 1897, and 1898. Deed No. 9 contains: N. W. ¼ of N. E. ¼ of sec. 27, T. 29 N., R. 4 E., bid off to the State at the tax sales in the years 1887, 1888, 1901, for the taxes of 1885, 1886, 1887, 1888, 1890, 1895, 1896, and 1898. Deed No. 10 contains: N. E. ¼ of N. E. ¼ of sec. 34, T. 29 N., R. 4 E., bid off to the State at the tax sales in the years 1888, 1900, and 1901, for the taxes of 1886, 1887, 1888, 1895, 1896, 1897, and 1898.

"It was conceded that these lands were delinquent for taxes for the requisite number of years to justify the auditor general in conveying the land to the State of Michigan, in pursuance of the tax homestead law. It was conceded that the tax titles for 1885 and 1887 in Montmorency county were void.    *    *    *

"Defendant offered in evidence:

"*Second.* The files for the tax proceedings and sales had in the year 1901. The lands and the years' taxes affected by this decree are as follows: Class No. 2: S. W. ¼ of N. E. ¼ of sec. 14, T. 29 N., R. 4 E., for the taxes assessed in the years 1888, 1890, 1895, 1896, 1898; N. W. ¼ of S. E.

¼ of sec. 14, T. 29 N., R. 4 E., for the taxes assessed in the years 1888, 1890, 1895, and 1898; S. E. ¼ of N. W. ¼ of sec. 23, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1890, 1895, 1896, 1898; N. ½ of S. E. ¼ of sec. 26, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1890, 1895, 1896, 1898; E. ½ of S. E. ¼ of sec. 34, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1890, 1895, 1896, 1898.

"*Third.* The files for the tax proceedings and sales had in the year 1902, for the taxes of 1899. The lands affected by this decree are as follows: Class No. 3: N. W. ¼ of N. E. ¼ of sec. 27, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1890, 1895, 1896, 1898; N. E. ¼ of N. E. ¼ of sec. 34, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1895, 1896, and 1898; S. W. ¼ of N. E. ¼ of sec. 35, T. 29 N., R. 4 E., for the taxes assessed in the years 1887, 1888, 1890, 1895, 1896, and 1898; S. E. ¼ of N. W. ¼ of sec. 35, T. 29 N., R. 4 E., for the taxes assessed in the years 1888, 1890, 1895, 1896, and 1898.

"*Fourth.* The tax proceedings and sales had in the years 1885 and 1886 were conceded void. There were no other proofs introduced to show the validity of any of the tax titles."

A verdict for defendants as to all the lands was directed by the court. Plaintiff brings the case here on writ of error.

As to the lands other than those conveyed by the auditor general to the State by the deeds of 1901 and 1902, the court below seems to have been of opinion that, defendant Gillman not having shown the validity of the tax proceedings upon which the tax homestead proceedings were based, plaintiff was entitled to recover, concluding, however, as the record discloses, to rule that plaintiff was not entitled to recover any of the lands. Using the classification of the lands adopted by counsel, we take up the contentions relating to class No. 1. These are the lands conveyed by the auditor general to the State October 1, 1895, and by the commissioner of the State land office to defendant Gillman November 4, 1901, and the deeds of conveyance were in evidence. It is said by counsel for appellant that these

deeds are not evidence of title in defendant.    *Taylor* v. *Deveaux,* 100 Mich. 582; *Dawson* v. *Peter,* 119 Mich. 278.    No answer is made to this contention, as we understand the brief for defendant.    It is replied, however, that these lands were held by the State of Michigan as State tax homestead lands for more than five years prior to the commencement of this suit, and that the State had taken and maintained adverse possession of the lands, so far as possession was held by any one.    It is said that the provisions of section 73, Act No. 206, Pub. Acts 1893, as well as section 116, Act No. 153, Pub. Acts 1885 (see *St. Mary's Power Co.* v. *Water-Power Co.,* 133 Mich. 470), should be applied.    This point is made for the first time in this court.    The court below charged the jury that only questions of law, depending upon documentary evidence, were involved in the case.    It is true, the point is made to sustain, and not to defeat, the judgment.    It may perhaps be assumed, the record not containing any evidence upon the subject, that upon the transfer by the auditor general to the State, in October, 1895, all of the things were done which the statute makes it the duty of the officers and agents of the State to do.    But the State is not, by virtue of the deed made by the auditor general to the State, a purchaser of the lands deeded, within the meaning of the statutes of limitation referred to.    *Gibson* v. *Commissioner of State Land Office,* 121 Mich. 49.    Furthermore, Act No. 84, Pub. Acts 1903, establishes the time within which the owners of the original title shall begin proceedings against the State to recover lands held as tax homestead lands, and this action of the legislature must be held to negative the idea that the other provisions referred to are to be treated as applying to the State.

It is further contended on the part of appellee that section 131 of the tax law of 1893 (Act No. 206, Pub. Acts 1893; 1 Comp. Laws, § 3953), as amended by Act No. 240, Pub. Acts 1897, and Act No. 107, Pub. Acts 1899, provides, as a condition precedent to the contesting of his titles, payment by plaintiff to the auditor general of all

delinquent taxes returned to the auditor general on the lands in question. See, also, section 127 (1 Comp. Laws, § 3949) of the general tax law. We think the provision does not apply here. Defendant is not a homesteader. The language of section 131 expressly requires such payment "in all cases where the lands have been taken as a homestead," and omits the requirement in the provision for sales to others than homesteaders. Nor is the case before us a suit to vacate the findings of the auditor general and commissioner of the State land office to the effect that it was proper to classify this land as State tax homestead land. Under the rulings of this court already referred to, the deeds, the basis of the title of defendant Gillman, were not either prima facie or conclusive evidence of title in defendant.

The lands placed in classes 2 and 3. Different descriptions of these lands had been sold for taxes levied in different years from 1885 to 1898, and had been bid in by the State. As to the taxes for 1885 and 1886, the tax deeds for which are made by the law of 1885 prima facie evidence of title, plaintiff produced testimony showing the titles to be invalid. No testimony was introduced on the part of plaintiff to show invalidity of deeds for taxes of 1887 and subsequent years, though we understand it to be conceded that the tax titles for 1887 are invalid.

We have already disposed of such questions as were raised relative to the effect of the deeds from the auditor general to the State and from the commissioner of the State land office to defendant Gillman. No testimony was introduced by defendant to show validity of any of his titles excepting those for the sales made to the State in the years 1901 and 1902. And the proceedings resulting in the sale to the State in 1902 do not affect title to any lands in class 2. We have to consider, therefore, the value to defendant of the interest acquired by the sale of 1901.

It appears that previous to or in 1901 the auditor general canceled and set aside various previous sales of land in

Montmorency county, and, in his petition filed in that county in 1901, he asked for and obtained a new decree for various old taxes which, as to most of the lands in class 2, were for years 1887, 1888, 1890, 1895, 1896, 1897, 1898. The lands in class 2 were offered for sale by the county treasurer at the sale beginning May 7, 1901. They were bid off to the State, and were subject to be redeemed until May, 1902. In the summer of 1901, under the provisions of section 127 of the general tax law, these lands were converted into State tax homestead lands, and on September 25, 1901, were deeded by the auditor general to the State. Plaintiff claims this deed to be void, because (1) the State had acquired, on September 25, 1901, no title by virtue of the sale made in May; (2) the auditor general was without authority to issue a deed for the interest acquired by the State in May, 1901. Put in another way, the contention is that in May, 1901, the State had no title to these lands, but had a lien upon them for unpaid taxes. This lien was in process of foreclosure under the decree of the court, and the proceedings to foreclose had reached the point where sale had been made to the State. Before the statute period for redeeming from this sale had expired, the auditor general deeded the lands to the State. Defendant's title is based upon that deed.

As we read the record, it was the opinion of the learned trial judge that it was immaterial whether the defendant had or had not acquired the title from the State under the decree and sale made in 1901, because, having shown, affirmatively, the validity of the decree and the regularity of the sale thereunder to the State, and the failure of plaintiff to redeem from the sale, a case had been made requiring the application of the rule that in ejectment the plaintiff must recover upon the strength of his own title, and not upon the weakness of the title of his adversary.

Some consideration seems, however, to have been given, in that connection, to the fact, already stated, that for many years previous to 1901, the lands had been held as State tax lands. We are of opinion that, in exercising

his authority to cancel the sales for these several years and in applying for and obtaining a new decree and proceeding to a sale thereunder, the auditor general destroyed all effect of the sales for those years and the character of the lands as State tax lands. The right of the owner to redeem attached, and the interest of the State was subject to be divested by such redemption. It must be held, therefore, that the auditor general had not, under existing laws, the authority to deed these lands to the State as abandoned lands, so as to convey to the State any interest acquired under the sale for taxes made in 1901. See Act No. 154, Pub. Acts 1895. It follows that the deed from the State land commissioner to defendant is of no effect as conveying any interest acquired under the decree and sale of 1901. It is clear, therefore, that the ruling made can be sustained only upon the broad ground, already stated, that a defendant in ejectment may defeat a recovery by the plaintiff by showing a sale of the lands in controversy to the State under a valid decree, and the expiration of the time given to redeem from the sale. We think the ruling cannot be sustained. The rule that a defendant in ejectment may defeat the plaintiff's title by showing an outstanding title in a third person is subject to qualification. In *Summerfield* v. *White*, 54 W. Va. 311, it was said:

"The general rule is that the plaintiff must recover on the strength of his own title. * * * But the general rule is subject to very important qualifications. These qualifications rest upon the principle of estoppel for the most part.

"'According to the general rule, this proposition means that he can recover only upon the strength of his own title as being good against the whole world, or as being good against the defendant by estoppel.' 10 Am. & Eng. Enc. Law (2d Ed.), p. 481."

See, also, Newell on Ejectment, p. 343. In *Bennett* v. *Horr*, 47 Mich. 223, in speaking of the rule that proof of an outstanding title constitutes a defense, Mr. Justice GRAVES states the qualification of the rule as follows:

"But to have this effect it must appear in some way that it is a present, subsisting, and operative legal title, and one on which the owner could sue and recover."

So, in *McDonald* v. *Schneider*, 27 Mo., at page 410, it was said:

"It is a well-established principle that an outstanding title in a third person, set up as a bar to a recovery in an action of ejectment, must be such a one as the owner of that title himself could recover on if he were asserting it in an action."

The interest which the State acquires at a tax sale by bidding in the lands sold is one which cannot be, aside from the provisions respecting trespass and to prevent waste, asserted by the State, under existing laws, except by sale. It is not authorized to take possession or maintain an action for possession. The law contemplates that the original owner shall retain possession. If the title is purchased from the State by an individual, he may not assert it, as a title, against the owner of the land, without formalities, required by the State, beneficial to the owner. Nor can an individual purchase, effectively, from the State, without also paying taxes thereafter levied upon the lands, if any are due at the time of his purchase. If defendant had purchased the title in question from the State, proceedings to assert it against the plaintiff could be undertaken only after notice and the failure of plaintiff to pay to him the statutory penalty. It would seem to be illogical to permit defendant to have a greater benefit from State ownership of this interest than he would have if he were himself the holder and owner, or, to assert a right of possession which the State itself, under existing laws, could not assert. As we understand the record and the briefs of counsel, the title of defendant to the lands in class 3 is subject to infirmities and claimed to be invalid for the reasons already discussed.

For the reasons stated, it must be held that defendant did not prove title to any of the lands in controversy, and

the judgment is reversed, with costs, and a new trial granted.

CARPENTER, C. J., and McALVAY and MONTGOMERY, JJ., concurred with OSTRANDER, J.

HOOKER, J. The lands involved in this action belonged at one time to the plaintiff, who held title through mesne conveyances under a Federal patent. At the time this action was brought, the defendant Gillman was in possession, under homestead deeds issued by the commissioner of the State land office; the lands having been previously deeded by the auditor general for the purpose, under the provisions of the tax law. This action is ejectment; Gillman and the officers mentioned being joined as defendants. Counsel have divided the lands into three classes. We will adhere to this division for convenience, in our discussion of the questions raised. All of the lands were repeatedly bid in for the State at delinquent tax sales from 1887 to 1898. Those embraced in class 1 were deeded to the commissioner in 1895, and were not included in the list canceled, as hereinafter set forth. The sales of the lands included in classes 2 and 3 were canceled, readvertised, and sold to the State at delinquent sale in 1901, and were subsequently and prematurely deeded to the State under the provisions of section 127, as amended (Act No. 107, Pub. Acts 1899), as abandoned lands. The defendants maintain: (1) That defendant Gillman acquired title to the land under the deeds from the land commissioner. (2) That even if he did not, the plaintiff's title being divested by the sale to the State, he cannot recover in this action.

Class 1. There is no proof of the validity of the proceedings under which these lands were sold to the State, and this is a prerequisite to a holding that title vested in the State. *Taylor* v. *Deveaux*, 100 Mich. 581; *Dawson* v. *Peter*, 119 Mich. 274. It was essential that jurisdiction, a decree, and sale, be shown. For want of this

proof, defendant's contention cannot prevail as to the lands in class 1.

Classes 2 and 3.    The title to these lands must depend upon the tax sales of 1901 and 1902.    The proceedings were shown to be regular.    We have the jurisdiction shown, a decree establishing and foreclosing a lien of the State, and a sale to the State.    Under repeated decisions, a sale to the State at delinquent sale, where the proceedings are shown to be regular, ripens into a title in fee simple in the State, after the expiration of the period for redemption, and, under our decisions, a defendant in ejectment may ordinarily make a complete defense by showing title in a third person.    Manifestly this must be a title inconsistent with the claim set up by the plaintiff. That the State becomes absolute owner in fee upon a purchase and expiration of redemption is fundamental to the scheme of sale of land for nonpayment of taxes.    For many years the proceedings were ministerial; the judicial branch of the government having no function to perform. Upon a sale and expiration of redemption, the purchaser, whether State or private person, obtained a perfect title, if the proceedings were regular.    If not regular, the purchaser acquired nothing in the nature of title.    This was so held in the case of *Robbins* v. *Barron,* 32 Mich. 36, and it has never been questioned.    The title cut off not only the prior owner's title, but all pre-existing mortgages and other liens, homestead, and dower rights.    Ejectment would be supported by such a title, and the practice in such cases was consistent with no other theory than that of complete divestiture of the title of the delinquent owner.    This should be held conclusive against the plaintiff in this case, to the extent of the land in classes 2 and 3, unless the rule is changed by Act No. 229, Pub. Acts 1897, and its amendatory Act No. 204, Pub. Acts 1899.

The act of 1897 (Act No. 229, Pub. Acts 1897) added four sections to the tax law.    The title stated the object as "providing for the giving of notice by tax purchasers to the occupants or persons having title to, or interest in

such lands, of the fact of such sale; and providing the terms upon which such occupant or other person interested in such lands may obtain reconveyance thereof." Section 140 prohibits the issuance of a writ of assistance to the owner, under a tax deed, until proof shall be filed, showing the service of a six months' notice of his claim. Section 141' gives to the last grantee under the regular claim of title, mortgagees, etc., a right to a *reconveyance* of the premises upon payment of the tax and interest, together with certain fees and penalties within such period. Section 142 prohibits the tax purchaser from entering upon the premises until after he has given such notice. Section 143 attempts to prescribe a short statute of limitation in favor of persons holding under tax deeds.

Under the law as it previously existed, and as it yet exists, it was the policy of the State to sell its tax lands. They are offered at succeeding delinquent sales, at which time the purchaser takes them subject to a further period of redemption, although the redemption period has expired before the sale, as we held in the case of *Monaghan* v. *Auditor General*, 136 Mich. 247. As there suggested, this provision did not necessarily affect the title of the State. The State had a right to impose a condition upon its sale by conveying a title subject to a right of redemption by the former owner, without thereby changing the provisions of law regarding the title acquired by the State. Failing to sell at such delinquent sale, it might still sell at private sale, and until the passage of Act No. 229, Pub. Acts 1897, such purchaser acquired an absolute title, as we have often held, and until that act was passed such a sale was conclusive upon the former owner. Since its passage the purchaser has taken a title to the land, but it was subject to a condition which the State saw fit to impose, thereby giving, as a matter of grace, to the taxpayer, an opportunity to obtain the State's title by purchase, just as he might have done had he seen fit to apply seasonably to the auditor general. The taxpayer loses his title by the expiration of redemption, when

the State's title ripens into an absolute title in fee simple. If no purchaser buys from the State, the land is held subject to the control of the legislature. It may, under existing laws, make homestead lands of such, after a lapse of time, or it may do as it has in the past, make a sort of closing out or bargain sale of such lands as it has long held. It ought to be at liberty to make other disposition of its accumulation of State tax lands, such as to provide for re-foresting, or any other public use. To hold that the absolute title to land, which the State takes, is not absolute after all, because limited to such methods of use or disposition as the law in existence at the time of its purchase provided, is not only unnecessary, but would, in our opinion, be unwise, and we think it certain that the legislature never contemplated such a limitation. If this were a case where defendant Gillman were claiming title under a deed from the auditor general, he would not be entitled to sue for and recover the possession, because he could not show a right to the possession. What we should be able or called upon to hold were he in actual possession under such a deed defending an action brought by the taxpayer, we need not decide. Possibly the statute might be construed to give a plaintiff possessory rights, of a character entitling him to recover, or we might say that all necessary for his complete protection would be to show the invalidity of the sale, or tender the sum necessary to entitle him to a reconveyance. But this is unimportant; the State has not sold its land either at delinquent sale, or at private sale, through the auditor general. The attempted transfer to the land commissioner was void. Manifestly, then, it yet holds an absolute title to these lands. The plaintiff's title in fee simple has been divested.

We are asked to hold that Act No. 229, Pub. Acts 1897, had the effect to abrogate the rule that the State has the absolute title to its State tax lands, so that we can reach a different result. The effect of such a holding would be far-reaching. Henceforth the State could make no dis-

position of its lands not now provided by law, because, as contended, the former owner still holds title, which can be divested only in the way already pointed out. We think that there can be no question that the State's title to such lands was without limitation, up to the time that Act No. 229 was passed, and that there is nothing in that act indicating an intention or a thought of changing the existing rule as to its title. What was sought was to afford relief to unfortunate landowners, a consideration that is always present both in courts and legislatures where tax sales of land are under consideration. The following cases, most, if not all of which, have been decided since 1897, must be qualified, if not overruled, to hold that the State has not a legal title to these lands. *Connecticut Mut. Life-Ins. Co.* v. *Wood*, 115 Mich. 444; *Allen* v. *Cowley*, 128 Mich. 530; *Hickey* v. *Rutledge*, 136 Mich. 128; *Monaghan* v. *Auditor General*, 136 Mich. 247; *Board of Sup'rs of Alcona Co.* v. *Auditor General*, 136 Mich. 130; *Raber* v. *Hyde*, 138 Mich. 101; *Blake* v. *Grondin*, 141 Mich. 104. A stumbling block is found in this case by reason of the suggestion that the title of the State becomes a defense to Gillman, who claims title under a void deed from the commissioner (therefore being without any title), while, as claimant under a valid deed from the auditor general, he would not be entitled to set up such a defense by reason of the statute which denies him the right of possession, and our decisions (*Corrigan* v. *Hinkley*, 125 Mich. 125, and *Huron Land Co.* v. *Robarge*, 128 Mich. 686), which hold that the original owner is entitled to possession as against such a purchaser. A tax title purchaser who has not complied with Act No. 229, Pub. Acts 1897, is a trespasser against the person holding possession, as we held in one of those cases. If we were to hold, further, that this act recognized the right of the tax delinquent, as that of a tenant or licensee, to possession, and therefore good as against one prohibited from entry, it need not follow that the character of the State's title to the land is affected. The auditor general has never sold this land.

The State has all of the title that it ever had, or that it could acquire under a purchase at tax sale by the expiration of redemption.

Under the general rule, the plaintiff can recover only upon the strength of his own title, and, if this plaintiff had no title nor right of possession, he could not recover under that rule against Gillman, although Gillman's possession is based on nothing more than a peaceable entry and continued occupancy. But, under the laws of this State as they exist at present, it is the policy of the State to make disposition of its State tax lands in different ways:

1. The auditor general may sell them at private sale.

2. He must offer them at public sales, if not previously sold.

3. Under certain conditions he must deed them to the land commissioner, who holds them subject to homestead entry.

If sold at a public sale, the sale is made subject to the privilege of redemption for a year. If at private sale, it is subject to a right of repurchase. If as a homestead, there is no right to either. So long as the State makes no other provisions for disposing of its lands ( which perhaps it may do, when the legislature shall see fit), the original owner is entitled to the possession of lands sold for taxes, until it has been lawfully sold as a homestead, or until the expiration of the six months prescribed by Act No. 229, Pub. Acts 1897. This is made apparent by said act, and such right, whatever it may be called, is sufficient to sustain ejectment against one who, like Gillman, has no title, as it probably would be against a tax title holder under a purchase at delinquent or private sale from the auditor general, because the law has so provided. Under the undisputed proof the plaintiff was entitled to the possession of all of these lands, as against defendant Gillman. The declaration claims ownership in fee, but, as no question has been raised upon it, we do not discuss the subject further than to say that there may be occasion to amend it. See *Fisher* v. *Hallock*, 50 Mich. 463.

143 MICH.—40.

It is not intended by this decision to cast any doubt upon the doctrine well settled by former decisions (see *Allen* v. *Cowley*, 128 Mich. 530; *Hickey* v. *Rutledge*, 136 Mich. 128; *Blake* v. *Grondin*, 141 Mich. 104), that the timber cut from State tax land and the cause of action resulting from said cutting belongs, not to the original owner, but to the State. The State's ownership of said timber and of said cause of action should be upheld upon the ground that it arises from a proper construction of sections 1323 and 3936 of the Compiled Laws of 1897 (see, also, Act No. 145, Pub. Acts 1903), and not upon the ground that the State is entitled to the possession of the land from which the timber was cut.

The judgment should be reversed, and a new trial ordered.

GRANT and MOORE, JJ., concurred with HOOKER, J.